IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:

PHILLIP L. PEED and
DEBORAH PEED,

    *Debtors.*

Case No.: 09-15486

PHILLIP L. PEED and
DEBORAH PEED,

    *Plaintiffs,*

vs.

SETERUS, INC., Servicer for Federal
National Mortgage Association; and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION ("Fannie Mae"),

    *Defendants.*

Adv. Proc. No.: 14-00025

**ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANTS'
MOTION TO DISMISS**

    Nick Wooten, Attorney for Plaintiffs, Auburn, AL
    Austin E. James, Attorney for Defendants, Atlanta, GA

This motion is before the Court on the Defendants' Motion to Dismiss the Plaintiffs' first, second, third, fourth, sixth, and seventh claims. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding as to all counts except Count IV which is a noncore proceeding. This order denies dismissal of the noncore count on subject matter jurisdiction grounds. Since the count is not dismissed, the court will not report and recommend this ruling on jurisdiction to the District Court. The District Court will have the ability to rule on the issue when this Court

1

recommends final disposition on all counts. Therefore, on the core claims, the Motion to Dismiss is due to be GRANTED in part and DENIED in part. The Plaintiffs' Motion to Dismiss the FDCPA claim due to lack of subject matter jurisdiction is also DENIED.

FACTS

The facts are stated as set forth by the Plaintiffs in their Complaint as required for a Motion to Dismiss. Mr. and Mrs. Peed filed a Chapter 13 voluntary petition on November 23, 2009. Chase, predecessor to Seterus as servicer of the Plaintiffs' mortgage loan, filed a sworn proof of claim (Claim No. 5) for the outstanding principal balance of $175,124.19, two pre-petition payments in arrears, accrued late charges and other charges as of November 23, 2009 in the total amount of $3,520.37. The Plaintiffs' Chapter 13 Plan as confirmed on April 16, 2010, proposed monthly payments directly to Chase. The Plan also proposed pre-petition arrearages to be paid through the bankruptcy. The Debtors' loan was transferred to IBM Lender Business Process Services, Inc. (LBPS) (now Seterus) effective October 1, 2010.

On March 26, 2012, the Plaintiffs instituted an adversary proceeding against Seterus, Fannie Mae, and others charging the Defendants with improperly holding payments and failing to correct errors to the Plaintiffs' account amongst other things. That adversary proceeding was settled. The Release and Settlement Agreement ("Settlement Agreement" or "Settlement") signed on November 6, 2012 by the Plaintiffs and on November 27, 2012 by Seterus and Fannie Mae, set out the following terms:

a. Seterus would pay Plaintiffs the sum of $10,000;

b. Defendants' claim filed in the debtors' Chapter 13 would be reduced to the amount paid, with the balance being reduced to $0.00;

      c.      Seterus would reduce the unpaid principal balance of Plaintiffs' mortgage loan amount to $137,800.00 and reflect a "current principal balance of $137,800" as of the date of settlement.

The Defendants paid $10,000 to Plaintiffs in accordance with the Settlement, but have not complied with the other terms of the Settlement Agreement.

On July 23, 2013 they checked their mortgage loan account status and discovered that Seterus was reporting (1) a negative escrow balance of $1,820.76, (2) an unpaid principal balance of $165,233.77 at 6.13% interest, and (3) that the last payment of $1,470 had been paid on July 12, 2013 and the next payment was due on June 01, 2013. They faxed a Qualified Written Request ("QWR") to Seterus on July 23, 2013 requesting a complete loan transaction history from November 23, 2009 forward. On August 19, 2013, Seterus responded to the Plaintiffs' QWR. The response evidenced the Settlement Agreement breaches complained of. Further, Seterus added late charges and fees to their account after the Settlement Agreement without the Court's approval. In addition, Seterus has misreported the status of the Peeds' account to credit reporting agencies. The Plaintiffs further state that their monthly payment is $1,460.36 and that since February of 2011, they have timely paid $1,470 to Seterus each month.

The Plaintiffs instituted this adversary proceeding on April 1, 2014 to enforce the terms of the Settlement Agreement. The Complaint alleges that the Defendants failed to reduce the Plaintiffs' principal balance and reflect their account as current as of the Settlement. Due to that failure, improper charges were added to the Peeds' account. The Plaintiffs contend that these actions constitute a breach of contract and fraud, and violate several laws. The Defendants admit that they failed to comply with the terms of the Settlement Agreement, but argue that this failure was inadvertent and does not rise to the level of an actionable claim.

## LAW

Federal Rule of Civil Procedure 8(a), incorporated to apply in bankruptcy cases by Federal Rule of Bankruptcy Procedure 7008, provides that a pleading that states a claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must contain sufficient factual allegations to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The asserted claim must state facts demonstrating the facial plausibility of a cause of action such that a court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the merits of a Rule 12(b)(6) motion, the Court must assume that all factual allegations set forth in the complaint are true. *See, e.g. Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002). Because all factual allegations are taken as true, the failure to state a claim for relief presents a purely legal question. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1269 n.19 (11th Cir. 2009).

Following *Twombly* and *Iqbal*, "detailed factual allegations are not required" but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Smith v. CH2M Hill, Inc.,* 521 Fed. Appx. 773, 774 (11th Cir. 2013) (internal

4

citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In summary, the well-pleaded facts must allow the court to infer more than the mere possibility of misconduct.

After *Iqbal*, the heightened pleading standard has been applied in the context of bankruptcy adversary proceedings. *See Angell v. BER Care, Inc.* (*In re Caremerica Inc.*), 409 B.R. 737 (Bankr. E.D.N.C. 2009). In *Angell*, the bankruptcy judge engaged in a detailed analysis of *Twombly* and *Iqbal*, and its application in the context of an adversary proceeding. Adopting the two-prong test laid out in *Twombly*, the court stated:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.... Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.

With this case law in mind, the issue presented here is this: If the Peeds' statements in their complaint are taken as true, do they state a claim that is plausible on its face?

**I. Violation of the Automatic Stay**

Pursuant to 11 U.S.C. § 362(a)(3) "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" violates the automatic stay. The Complaint alleges that the Defendants violated § 362(a)(3) by

        a. attempting to collect post-petition attorney fees;
        b. failing to make the Debtors' account current after confirmation of the chapter 13 plan;
        c. misapplying payments;

5

    d. double paying insurance premiums;
    e. attempting to collect fees and other charges not yet approved by the Court including, but not limited to, estimated future bankruptcy charges, inspection fees and escrows;
    f. failing to properly credit payments to the Debtors' account pursuant to the terms of the Note and Mortgage;
    g. improperly holding payments in a suspense account; and
    h. creating false delinquencies and defaults.

  The Defendants admit that after paying Plaintiffs the $10,000 according to the Settlement Agreement they did not comply with the other terms of the Agreement. They admit that they never reduced the Plaintiffs' principal balance in their files or showed that the Plaintiffs were current on their account. Further, they continued to assess late fees and add other charges to the Plaintiffs' account. They dispute the allegation that they misreported information to credit rating agencies.

  The conduct the Plaintiffs complain of could constitute violations of the automatic stay. *See In re Harris,* 280 B.R. 724 (Bankr. S.D. Ala. 2001) (finding that "what may violate the stay is [the creditor's] posting of the fee to Ms. Dean's account. It is posted for payment. As [the creditor] has shown, many of these fees are not ultimately collected, but the act of posting makes collection a possibility unless the fee is taken off the account."). The Defendants argue that the conduct complained of could not have violated the stay because the Plaintiffs do not plead that the Defendants ever attempted to collect on the disputed charges. For support, they cite *In re Sandlin,* 2010 WL 1416699 (Bankr. N.D. Ala. 2010) and *In re Hollingsworth,* 2012 WL 4465593 (Bankr. N.D. Ala. 2012). The *Sandlin* court found that merely noting a fee, without some affirmative act to collect, could not violate the stay. In this case, the Court is not convinced that the manner in which the Defendants recorded the erroneous fees could not constitute a stay violation. However, the Court need not decide the issue at this point. Here, the Plaintiffs clearly allege that the Defendants not only recorded erroneous fees in their records, but also took the

6

affirmative act of misreporting their account status to credit rating agencies.[1] Also, when the Plaintiffs submitted a Qualified Written Request ("QWR") requesting a complete and original loan transaction history, Seterus reported to the Plaintiffs that they owed the erroneous fees.

*Hollingsworth* is also distinguishable from the case at hand. In *Hollingsworth,* the debtors were not current on their mortgage when they filed a first and then a second Chapter 13 bankruptcy. Their arrearage was treated through the plan. During the cases, the mortgagee kept and failed to disclose internal records that purported to assess certain fees as if the debtors had never filed for bankruptcy. The mortgagee did not seek the bankruptcy court's approval for those fees. The *Hollingsworth* court found that these actions did not violate the stay stating "[t]he mere recordation of fees incurred by [a mortgagee] on its internal records, without any attempt to collect these fees from the debtor or estate or to modify the mortgage, is not an 'act' in violation of § 362(a)(3)." (internal citation omitted). The allegations in this Complaint are distinct from those in *Hollingsworth.* Here, the Plaintiffs allege that they did not incur late fees and other fees because, from the time of the Settlement, they have not been in default. Also, in contrast to *Hollingsworth*, the Complaint here alleges that the inaccurate records kept by Seterus were not simply internal records.

Other courts have found that actions similar to those complained of here could or do violate § 362(a)(3). *See In re Han,* 333 B.R. 881 (Bankr. N.D. Fla. 2005); *In re Jones,* 366 B.R. 584 (Bankr. E.D. La. 2007); *Mann v. Chase Manhattan Mortg. Corp.,* 316 F.3d 1 (2003) ("[T]hese postpetition bookkeeping entries by Chase did not implicate Bankruptcy code § 362(a)(3), since such unilateral accruals of amounts assertedly due, *but in no manner communicated to the debtor*, the debtor's other creditors, the bankruptcy court, *nor any third*

---

[1] In their brief opposing the Motion to Dismiss, the debtors assert they were denied credit due to the incorrect accounting as well. The Court is not considering this allegation because it is not in the Complaint. To be considered, Plaintiffs would need to amend their pleadings.

*party*, plainly are not the sort of "act" Congress sought to proscribe." (emphasis added); *In re Sims,* 278 B.R. 457 (Bankr. E.D. Tenn. 2002) (stating "Capital One or any creditor could produce all kinds of paperwork which *if communicated to the debtor or a third party would violate the stay*, but absent that communication, some overt act, or resulting effect on the debtor, no violation has occurred." (emphasis added)).

Assuming the facts complained of to be true, the Court finds that the Plaintiffs have stated a claim for relief under § 363(a)(3). Therefore, the Defendants' motion is DENIED with respect to this claim.[2]

## II. Failure to Credit Payments Upon Receipt

Pursuant to 15 U.S.C. § 1639(f), "[r]equirements for prompt crediting of home loan payments," "In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer . . . ." Section § 1640 provides statutory damages for violation of § 1639(f). It states "[e]xcept as otherwise provided in this section, *any creditor* who fails to comply with any requirement imposed under this part . . . is liable . . . ." Statutory damages are then listed for various claims. The Defendants argue that this claim should be dismissed because Seterus is a "servicer" not a "creditor" within the meaning of § 1640. It also argues that assignee liability is not appropriate for § 1639(f) claims and cites *Selman v. Citimortgage, Inc.,* 2013 WL 838193 (S.D. Ala. 2013) for support.

Seterus, as a servicer, and Fannie Mae, as an assignee, have distinct exposure to liability under 15 U.S.C. § 1639(f) and § 1640. Therefore, the Motion to Dismiss must be analyzed separately for each Defendant.

---

2

a. Seterus

15 U.S.C. § 1640 provides for statutory damages against "creditors." The Complaint alleges and the Defendants admit that Seterus is a "servicer," not a "creditor." While Seterus' conduct may give rise to liability under § 1640, Seterus cannot be held liable under that section. *See Khan v. Bank of New York Mellon,* 849 F.Supp.2d 1377 (S.D. Fla. 2012) ("While it is the servicer of the loan that has the obligation to provide the information to the borrower pursuant to section 1641(f), liability for violations of TILA rests squarely and solely with creditors."). Therefore, the Defendants' Motion to Dismiss the Plaintiffs' second claim is GRANTED with respect to Defendant Seterus.

b. Fannie Mae

The Defendants argue that Fannie Mae, as assignee of the mortgage, cannot be liable for its servicer's TILA violations. For support, they rely on *Selman v. Citimortgage, Inc.,* 2013 WL 838193 (S.D. Ala. 2013). The *Selman* court stated

> Defendants' position with respect to Count Thirteen is straightforward: Section 1640(a) of TILA authorizes civil actions to be filed only against "creditors," which are defined as the person to whom the debt arising from the Selmans' mortgage loan was initially payable on the face of the Mortgage. Neither Fannie Mae nor CitiMortgage is that person; therefore, they reason, they cannot be "creditors" within the meaning of § 1640(a) and cannot be liable under TILA for a violation of § 1639f. *In response, plaintiffs do not rebut these arguments*. They do not show that § 1640(a) can reasonably be construed as providing for servicer liability. They do not show that CitiMortgage or Fannie Mae reasonably fall within the statutory definition of "creditor" for purposes of § 1640(a). And they do not identify any other provision of TILA that might reasonably be viewed as giving rise to a private right of action for violations of § 1639f.[24] *Under the circumstances*, the Motions to Dismiss of CitiMortgage and Fannie Mae will be **granted** with respect to Count Thirteen, and that cause of action will be **dismissed.**

*Id.* at 15 (emphasis added). The Court is not persuaded by Defendants' argument. The *Selman* court took pains to point out that it was not presented with any argument in favor of assignee liability and it prefaced its holding with "Under the circumstances . . . ." Because the *Selman* court deliberately limited its holding to the case before it, the Court will not extend that holding here.

Rather, the Court is persuaded by the reasoning in *Khan v. Bank of New York Mellon,* 849 F.Supp.2d 1377 (S.D. Fla. 2012). The *Khan* court rightly pointed out that "TILA is a consumer protection statute, and as such must be construed liberally in order to best serve Congress' intent." (internal citations omitted). Section 1640 provides a private cause of action against creditors for TILA violations committed by servicers. The statutory scheme does not hold the servicers liable. The Court adopts the reasoning of *Khan* as follows:

> To reconcile the substantive obligation imposed upon servicers in [Section 1639(f)] and the remedial obligation levied upon creditors in Section 1640(a), this Court reads TILA to allow the application of agency principles so that creditors may be held vicariously liable for the acts of servicers as Plaintiff urges. By its plain language, 15 [U.S.C. § 1639(f)] imposes a disclosure obligation that is directed to servicers only. Thus, it is a servicer's failure to act that gives rise to the private right of action that is authorized in 15 U.S.C. § 1640(a). *See* [15 U.S.C. § 1639(f)]; 15 U.S.C. § 1640(a). TILA, however, does not contain any provisions allowing a consumer to bring a civil action against a servicer for a violation of [Section 1639(f)]. [Section 1639(f)] does not provide for a servicer's liability for damages if it fails to comply with the section's obligations, [15 U.S.C. § 1639(f)], and the only provisions within [Section 1641] concerning servicer liability limits a servicer's liability to situations in which the servicer was once an assignee or owner of the loan. 15 U.S.C. § 1641(f)(1). Thus, . . . servicers, who have no ownership in a loan obligation and who have never had any such ownership, are not subject to liability for a violation of [Section 1639(f)] . [...] Because TILA does not impose liability upon a servicer who is not an owner or assignee of a note, the private right of action that Section 1640(a) creates would be meaningless, unless agency principles permit a creditor to be held liable for [Section 1639(f)]   violations

Case 14-00025   Doc 20   Filed 07/01/14   Entered 07/01/14 08:37:54   Desc Main
Document      Page 10 of 18

> committed by its servicer. To avoid rendering Section 1640(a) superfluous, this Court concludes that agency principles apply, and creditors may be held vicariously liable for the [Section 1639(f)] violations of their servicers. [...] This conclusion gives force to the . . . provision in [Section 1639(f)] and comports with the intent of TILA to be "remedial in nature ... and ... [to] be construed liberally in order to best serve Congress's intent." *Ellis v. Gen. Motors Acceptance Corp.,* 160 F.3d 703, 707 (11th Cir.1998).

*Id.* (internal citations omitted).

Therefore, for the foregoing reasons, the Defendants' Motion to Dismiss the second claim of the Complaint is GRANTED with respect to Defendant Seterus and DENIED with respect to Defendant Fannie Mae.

### III. Improper and Unauthorized Fees

Pursuant to 11 U.S.C. § 506, a secured creditor whose claim is less than the value of the collateral securing the claim may collect "reasonable fees." The Plaintiffs charge that the fees assessed by Seterus after the Settlement date are not part of the Settlement and are not otherwise reasonable. Further, the Plaintiffs complain that the Defendants attempted to collect these unreasonable fees without the Court's approval. Federal Rule of Bankruptcy Procedure 3002.1 prohibits such conduct and allows an aggrieved debtor to pursue fees and costs associated with a violation of the rule. While the Plaintiffs did not specifically point to Rule 3002.1 in their Complaint, their allegations under § 506 are sufficient to state a claim.

The Defendants admit that the Complaint alleges that the Defendants have assessed charges and fees, but dispute the sufficiency of the Complaint to state a claim under § 506 contending that it does not allege sufficient facts for the Court to draw a plausible inference that the Defendants attempted to collect those fees and charges. The Complaint alleges that the Defendants reported false information to credit rating agencies and misapplied Debtors'

payments as a result of the erroneously charged fees. These allegations are sufficient to state a claim. Therefore, the Defendants' Motion to Dismiss is DENIED with respect to this claim.

**IV. Violation of the Fair Debt Collection Practices Act**

The Plaintiffs' third claim alleges violations of the Fair Debt Collection Practices Act (FDCPA). The Defendants do not raise a substantive (12(b)(6)) objection to these claims. Rather, they bring a 12(b)(1) motion contending that the Court lacks subject matter jurisdiction to hear these claims.

Bankruptcy courts derive subject matter jurisdiction from 28 U.S.C. § 1334(b). It states that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The effect of § 1334(b) is to carve out three specific categories where jurisdiction is proper: (1) cases arising under title 11, (2) cases arising in title 11, and (3) those related to cases under title 11. *In re Toledo*, 170 F.3d 1340, 1344 (11th Cir. 1999). The district courts, in turn, have authority to specifically endow the three categories of jurisdiction upon bankruptcy courts through 28 U.S.C. § 157(a). *Shortsleeve*, 349 B.R. at 299. "The bankruptcy court's jurisdiction is derivative of and dependent upon these three bases." *Toledo*, 170 F.3d at 1344. In this district, the District Court has entered a general Order of Reference referring title 11 proceedings to this Court. 28 U.S.C. § 157(b) allows bankruptcy judges to hear and enter appropriate orders and judgments as to matters referred to them by the district court, including core proceedings. Section 157(b)(2) details a nonexhaustive list of core proceedings.

As to the three categories of jurisdiction, courts in this circuit adhere to the following tests. Matters arising under title 11 are "matters invoking a substantive right created by the Bankruptcy Code." *Toledo*, 170 F.3d at 1345. "Proceedings that arise in a case under title 11 are

**12**

'generally thought to involve administrative-type matters' or 'matters that could arise only in bankruptcy.'" *Wynne*, 422 B.R. at 770. "The usual articulation of the test for determining whether a civil proceeding is related to a bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Id.* (quoting *Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th Cir. 2000)).

The Defendants argue that the Plaintiffs' FDCPA claim does not "arise under, arise in, or relate to" a case under Title 11 and, therefore, the Court has no statutory authority to hear this claim. In support, they cite *In re Shortsleeve,* 349 B.R. 297 (Bankr. M.D. Ala. 2006); *In re Bauer,* 2012 WL 4442241 (Bankr. N.D. Ala. 2012); *In re Imel,* 2011 Bankr. LEXIS 5465 (Bankr. N.D. Fla. 2011); and *In re Wynne,* 422 B.R. 763 (Bankr. M.D. Fla. 2010). In those cases, the courts dismissed plaintiffs' FDCPA claims because the claims did not arise under, arise in, or relate to a case under Title 11. The facts of those cases are distinguishable from the facts before this Court. Specifically, each of the cited cases arose out of a debtor's Chapter 7 bankruptcy. The plaintiffs in those cases alleged that after they filed a Chapter 7 and received a discharge, a lender violated the FDCPA. In a Chapter 7, the bankruptcy estate is fixed as of the date of filing. In contrast, this adversary proceeding arises out of the Debtors' Chapter 13 bankruptcy. In a Chapter 13, income received by the debtor during the lifetime of the plan and claims that arise during the case are property of the estate. 11 U.S.C. § 1306; *see Crouser v. BAC Home Loans Servicing, L.P.,* 476 B.R. 340 (Bankr. S.D. Ga. 2012). In this case, the Plaintiffs allege that the Defendants violated the FDCPA during the lifetime of their Plan. If they succeed on these claims and receive a money judgment, the judgment is an asset of the Estate. Therefore, the Plaintiffs' claim is "related to" their case under Title 11 and the Court has subject matter jurisdiction under

**13**

28 U.S.C. §§ 1334(b) and 157. However, the Court does not have constitutional authority to enter a final order on this claim.

In *Stern v. Marshall,* 131 S.Ct. 2594 (2011), the Supreme Court held that a bankruptcy court could not constitutionally exercise jurisdiction over a state law counterclaim asserted by a debtor in her bankruptcy case. While the Plaintiffs here do not assert a counterclaim, their FDCPA claim, like the claim in *Stern,* is non-core. *See In re Imel,* 2011 Bankr. LEXIS 5465 (Bankr. N.D. Fla. 2011). The Plaintiffs' FDCPA claim is what has come to be called a *Stern* claim—a claim over which the bankruptcy court has statutory authority, but not constitutional authority to enter an order. Recently, in *Executive Benefits Ins. Agency v. Arkison,* 2014 WL 2560461 (2014), the Supreme Court clarified that bankruptcy courts may hear *Stern* claims and issue proposed findings of fact and conclusions of law to be reviewed *de novo* by the district court. The Court will exercise its statutory authority to hear Plaintiffs' FDCPA claims and issue proposed findings of fact and conclusions of law on them. The District Court does have jurisdiction to hear FDCPA claims. 28 U.S.C. § 1331; *see also Fabre v. Bank of America Bank, NA,* 523 Fed. Appx. 661 (11th Cir. 2013) (stating "[The] complaint raised violations of the Fair Debt Collection Practices Act ("FDCPA") . . . . Therefore, [the] complaint established federal question jurisdiction by raising federal law claims.") The District Court will review this Court's findings *de novo* and enter a final order. Therefore, the Defendants' Motion to Dismiss for lack of subject matter jurisdiction is DENIED with respect to this claim.

## V. Breach of Contract

In their Motion, the Defendants admit that they breached the Settlement Agreement and they do not seek dismissal of that claim.

## VI. Fraud

**14**

The Plaintiffs allege that the Defendants committed fraudulent misrepresentation under Alabama Code § 6-5-101 which states "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." The Defendants contend that this claim should be dismissed because it has not been pled with the specificity required under Rule 9(b). Fed. R. Civ. P 9(b), which is made applicable to adversary proceedings in bankruptcy through Bankr. R. Civ. P. 7009, states that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

To plead fraud with particularity, the complaint must state "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *U.S. ex rel. Keeler v. Eisai, Inc.,* 2014 WL 2595592 (11th Cir. 2014) (internal citations omitted). The Complaint states that the Defendants made four fraudulent representations:

> (a) Defendants would honor the negotiated terms of the settlement of the prior adversary proceeding.
> (b) The Defendants would make adjustments to the Plaintiffs' mortgage loan account in accordance with the negotiated terms of the settlement agreement.
> (c) That the Defendants would not seek to collect amounts claimed owing which were resolved in the prior adversary proceeding.
> (d) That the Defendants would treat the Plaintiffs mortgage loan account as post-petition current going forward from the settlement of the previous adversary proceeding.

It is clear from the facts alleged that these statements were made by the Defendants or their agents during the course of settlement negotiations and confirmed in the Settlement Agreement

that this Court approved. The statements were made in this Court at the time that the Settlement Agreement was submitted for approval. The Complaint also alleges that the Defendants gained a Settlement on favorable terms of the Plaintiffs' prior claims by making these false promises.

The Defendants contend that the fraud claim cannot go forward because "a failure to honor one's obligations under a contract . . . does not constitute fraud." *Heisz v. Galt Indus., Inc.*, 93 So. 3d 918, 925 (Ala. 2012) (stating "[F]ailure to perform alone is not sufficient evidence to show a present intent not to perform. If it were, then every breach of contract would be 'tantamount to fraud.'"). Here, in addition to pleading the Defendants' breach of contract (a claim that the Defendants concede), the Plaintiffs allege that the Defendants knowingly or recklessly induced the Plaintiffs to enter the Settlement Agreement with knowledge that they would not adhere to its terms or with reckless disregard for whether they would implement policies and procedures to comply with the terms of the Agreement. This is sufficient to state a claim for fraud under Alabama law.

The Defendants' reliance on *Heisz* is misplaced because the procedural posture of *Heisz* is distinct from the posture here. The *Heisz* decision was rendered on appeal. The court found that the lower court had erred in submitting a fraud claim to the jury because there was insufficient evidence of fraud and the court should have entered a judgment on the claim as a matter of law. The *Heisz* court was only able to conclude that there was insufficient *evidence* of fraud after the parties engaged in discovery. Here, the parties have not engaged in discovery at all. If, after discovery, the Plaintiffs have not produced evidence beyond the breach of contract to support their fraud claim, then the claim may be ripe for judgment as a matter of law. However, the Defendants have not met their burden of showing that the Plaintiffs' fraud claim is not

16

plausible based on the facts pled. Therefore, the Defendants' Motion to Dismiss is DENIED with respect to this claim.

**VII. Fraudulent Suppression**

The Plaintiffs allege that the Defendants fraudulently suppressed material facts under Alabama Code § 6-5-102 which states "Suppression of a material fact which the party is under obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." The Complaint states that the "Defendants knew or should have known at the time they made the following representations to the Plaintiffs that each of the representations were untrue . . . ." The representations outlined above that were part of the Settlement Agreement follow. The Defendants make the same argument against this claim that they do against the fraud claim, and for the reasons discussed above, the Court is not persuaded by this argument. Therefore, the Defendants' Motion to Dismiss in DENIED with respect to this claim.

Therefore, for the foregoing reasons, it is ORDERED that the Defendants' Motion to Dismiss is GRANTED in part and DENIED in part as follows:

1.) The Defendants' Motion is DENIED with respect to the first claim;

2.) The Defendants' Motion is GRANTED as to Defendant Seterus and DENIED as to Defendant Fannie Mae with respect to the second claim;

3.) The Defendants' Motion is DENIED with respect to the third claim;

4.) The Defendants' Motion is DENIED with respect to the fourth claim;

5.) The Defendants did not file a Motion to Dismiss the Plaintiffs' fifth claim, and the fifth claim stands;

6.) The Defendants' Motion is DENIED with respect to the sixth claim;

7.) The Defendants' Motion is DENIED with respect to seventh claim.

Dated: July 1, 2014

_____
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

18

Case 14-00025    Doc 20    Filed 07/01/14    Entered 07/01/14 08:37:54    Desc Main
Document    Page 18 of 18